UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBBIN L. MUSTIN,

                              **Plaintiff,**

                  v.                                      5:06-CV-969
                                                                       (FJS)

**MICHAEL J. ASTRUE,**[1] **Commissioner of
Social Security,**

                              **Defendant.**
_____

**APPEARANCES**                                            **OF COUNSEL**

**CORNELL LEGAL AID**                      **BARRY STROM, ESQ.**
**CORNELL UNIVERSITY**
Myron Taylor Hall
Ithaca, New York 14853
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**      **KARLA J. GWINN, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       Plaintiff filed an application for supplemental security income ("SSI") and disability

---

[1] Plaintiff named Jo Anne B. Barnhart, the former Commissioner of Social Security, as Defendant in this action. On February 12, 2007, Michael J. Astrue took office as Social Security Commissioner. The Court, therefore, has substituted him as the named Defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure. No further action is required to effectuate this change. *See* 42 U.S.C. § 405(g).

insurance benefits ("DIB") on March 22, 2005, alleging that he became disabled on July 15, 2003. *See* Administrative Transcript ("Tr.") at 105. Plaintiff's application was initially denied. *See id.* at 75. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 11, 2006. *See id.* at 23. On May 24, 2006, the ALJ issued a decision denying Plaintiff's application for disability benefits. *See id.* at 23-30. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on July 21, 2006. *See id.* at 10.

On August 10, 2006, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) to review that final decision. In support of his argument that the Court should reverse Defendant's decision and award his benefits, Plaintiff asserts that (1) the ALJ erred in finding that Plaintiff's right foot and ankle impairment could not be expected to last for more than twelve months; (2) the ALJ failed to follow the treating physician rule; (3) the ALJ erred in assessing Plaintiff's non-exertional limitations; and (4) the ALJ should have elicited vocational expert testimony in this case. *See* Plaintiff's Brief at 5-15. Defendant contends that there is substantial evidence in the record to support the ALJ's decision and that, therefore, the Court should dismiss Plaintiff's complaint.

## II. BACKGROUND

**A.     Procedural history**

Plaintiff was forty-five years old at the time of the administrative hearing in 2006. *See* Tr. at 26. He has a GED and past relevant work experience as a welder. *See id.* at 132. Plaintiff alleges disability due to a right foot impairment, alcohol abuse, hepatitis C, status post

reconstructive osteotomy of the right ankle, and depressive disorder. *See id.* at 105.

**B.     Medical evidence in the record**

*1. Treating and examining physicians – physical*

On April 9, 2005, Plaintiff sustained a calcaneus fracture which caused right ankle and foot pain and swelling. *See* Tr. at 379, 446. Plaintiff treated for this foot condition with Dr. Beth Dollinger from approximately July 14, 2005, until December 5, 2005. *See id.* at 503-31. On September 14, 2005, Dr. Dollinger performed a reconstructive osteotomy to repair the fracture. *See id.* at 505. On October 8, 2005, Dr. Dollinger noted that Plaintiff's surgery wound was well-healed with mild to moderate amount of soft tissue swelling and little pain. *See id.* at 507. X-rays showed that the surgery had gone well and that the screw was in a good position. *See id.* On December 5, 2005, Dr. Dollinger again noted that the surgery site was well-healed. *See id.* at 508. On March 23, 2006, Dr. Dollinger completed a medical source statement and opined that Plaintiff could stand and walk for up to one hour in an eight-hour workday, sit for six to eight hours in an eight-hour workday, and would need unscheduled breaks to alleviate his pain. *See id.* at 631. She also indicated that Plaintiff could never balance, stoop, crouch, or kneel. *See id.* at 632.

Plaintiff injured his lower back and left buttock in the summer of 2000. *See id.* at 618. An MRI dated March 13, 2006, showed small herniated discs at the L3-4 and L4-5 level that did not contact the nerve roots or thecal sac and would not likely produce symptomatic improvement with surgery. *See id.* at 620. An aquatic exercise program was ordered. *See id.* Dr. Anthony Sanito treated Plaintiff for his back condition from approximately November 21, 2005, through

January 5, 2006. *See id.* at 546-59. During this time, Plaintiff received epidural steroid injections for treatment of his back pain. *See id.* Plaintiff reported that he experienced good pain relief from these injections. *See id.* at 547-49.

Plaintiff saw Dr. Andrew Jenis on March 20, 2005. *See id.* at 317. Dr. Jenis noted a normal physical examination, with an active range of motion ("ROM") and negative straight leg raising ("SLR") test. *See id.* at 318. Plaintiff was diagnosed with chronic sciatica and was prescribed Xanax and Percocet. *See id.* Plaintiff was also noted to have Hepatitis C, which caused fatigue. *See id.*[2]

The record also reflects multiple visits to the emergency room over the time period from January 2004 through February 2006; the primary purpose for these visits was to receive prescription narcotic medication. *See id.* at 182-95, 223-62, 269-80, 299-317, 327-52, 360-78, 401-22, 436-44, 614-16.

### 3. *Non-examining physicians*

Two medical experts reviewed Plaintiff's records and completed Residual Functional Capacity ("RFC") assessments. The first, a physical RFC assessment, was completed on July 27, 2005, and found Plaintiff able to lift twenty pounds occasionally and ten pounds frequently; sit, stand, and/or walk for about six hours in an eight-hour workday, and push and pull to the extent indicated by his lifting and carrying restrictions. *See id.* at 452. No postural, manipulative,

---

[2] The table of contents for the administrative transcript states that Dr. Noia's evaluation appears in the record at pages 431 through 435. However, the record jumps from page 419 to page 450, and the intervening pages do not appear in the supplemental transcript, which consists only of pages 397, 446, 556-59, 577, 579, 581-92, 594, 601-03, 606, 611, 618-20, and 622-23.

visual, communicative, or environmental restrictions were noted. *See id.* at 453-54. The completing physician noted probable drug-seeking behavior in Plaintiff's pattern of asking for specific narcotic medications to treat his back pain. *See id.* at 455.

A mental RFC assessment was completed on July 27, 2005. *See id.* at 471-74. This assessment found that Plaintiff had moderate limitations in understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, completing a normal workday without interruptions, accepting and responding appropriately to instructions, getting along with coworkers, traveling to unfamiliar places or using public transportation, and setting realistic goals and making plans independently of others. *See id.* at 471-72. It was noted that Plaintiff had never been psychiatrically hospitalized but that he had been hospitalized for overdose. *See id.* at 473.

A psychiatric review technique form was also completed and indicated that Plaintiff suffered from an affective disorder which did not meet the criteria of any listed impairment. *See id.* at 460. Plaintiff was found to have mild restrictions in activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. *See id.* at 467.

### III. DISCUSSION

**A.     Disability determination**

To be considered disabled, a plaintiff seeking DIB or SSI disability benefits must establish that "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(1)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. § 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *See id.*

**B.     Scope of review**

In reviewing the Commissioner's final decision, a court must determine whether the Commissioner applied the correct legal standards and whether there is substantial evidence in the record as a whole to support the decision. *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)) (other citations omitted). A reviewing court, however, may not affirm an ALJ's decision if it reasonably doubts that the ALJ applied the proper legal standards, even if it appears that there is substantial evidence to support that decision. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports his decision. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citation omitted). A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991) (citations omitted). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quotation omitted). "It is more than a mere scintilla or a touch of proof here and there in the record." *Id.*

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Id.* (citations omitted). "However, a reviewing court cannot substitute its interpretation

of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision." *Lewis v. Comm'r of Soc. Sec.*, No. 6:00 CV 1225, 2005 WL 1899399, *1 (N.D.N.Y. Aug. 2, 2005) (citations omitted).

In the present case, the ALJ found that (1) Plaintiff met the nondisability requirements for a period of disability and DIB set forth in Section 216(i) of the Social Security Act and was insured for benefits through the date of the decision; (2) Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability; (3) Plaintiff had the following severe impairments: alcohol abuse, not in full and successful remission; Hepatitis C; status post reconstructive osteotomy of the right ankle; and mild depressive disorder not otherwise specified; (4) these impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4; (5) Plaintiff retained the RFC to perform the full range of sedentary work; (6) Plaintiff was not fully credible; (7) Plaintiff was unable to perform his past relevant work; (8) Plaintiff was a younger individual with a high school education and transferability of skills was not an issue in this case; (9) Plaintiff retained the RFC to perform a significant range of light work; (10) using Medical-Vocational Rule 201.21 and assuming that Plaintiff could perform the full range of sedentary work, a finding of non-disability was directed. *See* Tr. at 25-30.

As noted, Plaintiff takes issue with a number of the ALJ's findings and his ultimate conclusion of non-disability. The Court will address each of Plaintiff's arguments in turn.

### *1. Plaintiff's foot impairment*

Plaintiff argues that the ALJ erred in determining that his foot impairment could not be

expected to last twelve months or longer. *See* Plaintiff's Brief at 5-6. Initially, it should be noted that the ALJ did find Plaintiff's status post reconstructive osteotomy of the right ankle to be a severe impairment. *See* Tr. at 25. Plaintiff points to the ALJ's statement that there was "no good reason" that Plaintiff could not perform sedentary work for a "very protracted period of time, such as 12 continuous months or more." *See id.* at 28. The ALJ made this statement after reviewing Dr. Dollinger's treatment records, which indicated that Plaintiff's condition had improved over time after his reconstructive osteotomy of the right ankle. *See id.* The ALJ noted that Dr. Dollinger's March 23, 2006 statement did not indicate that Plaintiff's disability could be expected to last longer than temporarily, as the foot continued to heal. *See id.* at 28, 631-32.

The Court finds that substantial evidence supported the ALJ's conclusion in this regard. Dr. Dollinger's records indicate that the surgery site was healing over time and that X-rays showed a successful screw placement in Plaintiff's ankle. *See id.* at 503-31. Given the temporary nature of Dr. Dollinger's functional assessment and the evidence that Plaintiff's foot impairment was healing, the ALJ had substantial evidence on which to base his conclusion that Plaintiff's foot impairment would not prohibit Plaintiff from performing sedentary work activities.

### 2. Treating physician rule

The case law and the regulations provide that, although a treating physician's opinion is not binding on the Commissioner, the Commissioner must give that opinion controlling weight when it is well supported by medical findings and not inconsistent with other substantial evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citations omitted); 20 C.F.R. § 416.927(d). On the other hand, if other substantial evidence in the record contradicts the

treating physician's opinion, the ALJ is not required to give that opinion controlling weight, *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citations omitted); however, he "'cannot arbitrarily substitute his own judgment for competent medical opinion[,]'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quotation and other citations omitted).

If he decides not to give controlling weight to the treating physician's opinion, the ALJ must assess the following factors: the length of the treatment relationship, the frequency of examination for the condition in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(d)(2)-(d)(6); 416.927(d)(2)-(d)(6).

Plaintiff argues that the ALJ substituted his opinion for that of Dr. Dollinger, his treating orthopedic physician. Plaintiff asserts that Dr. Dollinger's March 23, 2006 assessment is controlling in this case. *See* Tr. at 631-32. As noted above, this assessment found that Plaintiff could stand and walk for up to one hour in an eight-hour workday, sit for six to eight hours in an eight-hour workday, and would need unscheduled breaks to alleviate his pain. *See id.* at 631. Dr. Dollinger also indicated that Plaintiff could never balance, stoop, crouch, or kneel. *See id.* at 632. The ALJ reviewed this assessment and found it to be inconsistent with the medical record as a whole, as well as with Dr. Dollinger's own treatment records.

The Court finds that substantial evidence supported the ALJ's decision not to give controlling weight to Dr. Dollinger's assessment. Dr. Dollinger's own treatment notes for the time period in which she treated Plaintiff, from October to December 2005, indicate that his surgery site healed well and that the ankle screw was properly placed. *See id.* at 503-31. X-rays

showed unremarkable results, and Dr. Dollinger noted in March 2006 that Plaintiff's surgical hardware was in good position with a solid subtalar fusion. *See id.* at 508, 629. Plaintiff also reported daily activities such as regular bike riding, moving furniture, cooking for up to an hour, performing housekeeping tasks for ninety minutes at a time, walking, attending doctors' and counseling appointments, attending church weekly, going for rides with friends, and watching television. *See id.* at 126-29, 274. Moreover, Dr. Dollinger's conclusion that Plaintiff was totally disabled represents an opinion on disability, an issue that is properly reserved to the Commissioner. *See* 20 C.F.R. § 1404.1527(e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (noting that "[a] treating physician's statement that the claimant is disabled cannot itself be determinative").

### 3. Non-exertional limitations

Plaintiff next argues that the ALJ improperly assessed his non-exertional limitations. *See* Plaintiff's Brief at 9-10. Plaintiff focuses on Dr. Dollinger's March 23, 2006 opinion that Plaintiff could never balance, stoop, crouch, or kneel, arguing that this opinion should be afforded controlling weight. *See id.*; Tr. at 631-32. Since the Court has already determined that the ALJ properly weighed Dr. Dollinger's March 23, 2006 opinion, this argument is unavailing.

### 4. Vocational expert testimony

Plaintiff argues that the ALJ should have consulted a vocational expert in this case because significant non-exertional limitations were present. *See* Plaintiff's Brief at 10-13. This argument, too, relies on the assumption that Dr. Dollinger's opinion regarding Plaintiff's ability to

-11-

balance, stoop, crouch, and kneel should have been given controlling weight. As the Court has already found, however, there was substantial evidence to support the ALJ's decision to afford Dr. Dollinger's opinion less than controlling weight.

If a plaintiff's situation fits well within a particular classification, then resort to the Medical-Vocational Guidelines, or "grids," is appropriate. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). If, on the other hand, non-exertional impairments, including pain, significantly limit the range of work permitted by exertional limitations, then use of the grids is inappropriate, in which case further evidence and/or testimony is required. *See Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06. In this case, the ALJ found no significant non-exertional impairments which would prohibit the ALJ's consulting the grids for a disability determination. Therefore, the ALJ's use of Medical-Vocational Rule 202.21 to direct a finding of non-disability was proper.

## IV. CONCLUSION

After carefully reviewing the entire record in this case, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED.**

Dated: April 3, 2008
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge